UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| EDWARD R. BAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:18-cv-00011-RLY-DML |
| | ) | |
| GOLDEN CORRAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In June 2017, at the age of 59, Plaintiff Edward R. Bay, applied for a Franchise Business Consultant ("FBC") position with Golden Corral Corporation. After he learned he was not selected for the position, he filed a *pro se* Complaint alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Golden Corral now moves for summary judgment. For the reasons set forth below, the court **GRANTS** the motion.

**I.    Procedural Rules**

On November 6, 2018, Golden Corral served Bay a Notice Regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment. (Filing No. 47). The Notice specifically informed Bay that his Response "must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that [he] contends demonstrate a dispute of fact precluding summary judgment." (*Id.* at 3 (quoting Local Rule 56-1(b)). The Notice further informed Bay that the court will assume "the facts as claimed and supported by

1

admissible evidence by [Defendant] are admitted without controversy" unless he specifically disputed those facts "with admissible evidence." (*Id.* at 4 (quoting Local Rule 56-1(f)). Bay complied with neither rule. While the court can excuse his failure to provide a Statement of Material Facts in Dispute, it cannot excuse his failure to provide any evidence at all to support his allegations. *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed. Appx. 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow the rules of civil procedure."). Accordingly, the court must accept Golden Corral's Statement of Facts as true. The court will also, in general, incorporate Bay's factual assertions to the extent they are relevant and supported by his deposition testimony (as addressed in Golden Corral's briefs). The court now turns to the facts of the present case.

## II. Facts

### A. Bay Applies for the Position

Golden Corral operates buffet style restaurants and has multiple company-owned and franchisee-owned locations through the United States. (Filing No. 46-1, Declaration of Erika Braun ("Braun Decl." ¶ 3)). Throughout 2017, Golden Corral publically posted on multiple websites an "evergreen" job advertisement for multi-unit management candidates. (*Id.*). Such candidates are hired to work either as a District Manager ("DM") to manage multiple company-owned restraurants, or as an FBC to service multiple

franchisee-owned restaurants. (*Id.*). On June 25, 2017, Golden Corral received Bay's electronic job application for a multi-unit management candidate position. (*Id.*).

### B. The Interviews

On July 17, 2017, Bay had an in-person interview with Golden Corral Corporation Division President Roy Hinojosa at the Indianapolis Airport. (Filing No. 46-4, Declaration of Roy Hinojosa ("Hinojosa Decl." ¶ 3)). After that interview, Hinojosa recommended that Bay be passed through to the next phase in the hiring process, which involved a series of interviews conducted at Golden Corral's corporate office on July 28, 2017. (*Id.*).

His first interview that day was with Director of Human Resources Erika Braun. (Braun Decl. ¶ 5). After Bay expressed his admiration for the longevity of Golden Corral's staff, Braun stated that long-term staff are resistant to change and that "older employees are a blessing and a curse." (Filing No. 46-3, Deposition of Edward R. Bay ("Bay Dep.") at 122; *see also* Bay Dep. at 74-75 (testifying he knows of nothing besides the purported facts in his original complaint that could support his claim for age discrimination); Bay Dep. Ex. 3, Compl. ¶¶ 16, 19).

Bay's next interview was with Senior Vice President of Human Resources Judy Irwin. (Filing No. 46-6, Declaration of Judy Irwin ("Irwin Decl.") ¶ 4). During the interview, Irwin inquired about Bay's time as a franchisee with Shoney's family dining restaurants. (*Id.* ¶ 5). His resume indicated he had received numerous awards and commendations for his Shoney's restaurants, yet he told Irwin that he chose not to renew his leases for the restaurants. (*Id.*). Irwin was concerned with Bay's response that he

3

terminated his restaurants because it did not make sense that he would voluntarily relinquish successful restaurants and years later, seek employment in the restaurant industry. (*Id.*).

Bay's third interview was with Michael Wilkerson, Vice President of Company Operations. (Filing No. 46-7, Declaration of Michael Wilkerson ("Wilkerson Decl,") ¶ 2). During the interview, Wilkerson asked about the gaps in his employment, why he left Shoney's after being with the company so long, and why he wanted to return to the restaurant industry. (*Id.* ¶ 4). Wilkerson was particularly concerned about Bay's time away from a hands-on FBC role, and asked Bay several specific questions about the FBC position at Golden Corral. (*Id.* ¶¶ 4-5). Wilkerson also asked him how he would handle franchises under different scenarios. Wilkerson was not satisfied with Bays' answers; he thought they exhibited a lack of leadership and time-management abilities and reflected that he was not familiar with the day-to-day duties and responsibilities required of an FBC in order to adequately support franchisees and drive results. (*Id.* ¶ 5). Toward the end of the interview, Wilkerson informed Bay that if he was offered the FBC position, he would first attend Golden Corral's 12-week training course that all newly-hired FBC's must complete. (*Id.* ¶ 6). He said, "How do you think you are going to be able to make it through 12 weeks of training at one of our restaurants? Look at me, I almost didn't make it, how will you?" (Bay Dep. at 94).

Bay's fourth interview was with Lisa Schweickert, Vice President of Operations Services. (Filing No. 46-8, Declaration of Lisa Schweickert ("Schweickert Decl.") ¶ 2). At some point during the interview, Bays expressed his admiration for the longevity of

4

Golden Corral's staff. Schweickert allegedly said that older team members could be a blessing and a curse because long-term staff were resistant to change and therefore an impediment to Golden Corral's new direction. (Compl. ¶¶ 16, 19).

Schweickert was interested in Bay's experience at Shoney's[1] because she previously worked with Rick Smith, the former Vice President of Human Resources at Shoney's. (Schweickert Decl. ¶ 4; *see also* Filing No. 46-9, Declaration of Rick Smith ("Smith Decl."), ¶¶ 1-2). Schweickert asked Bay if he knew Smith while he worked at Shoney's. Bay confirmed that he knew Smith, and Schweickert let Bay know that she and Smith had previously worked together. (Schweickert Decl., ¶ 5; *see also* Bay Dep. at 117). On the afternoon of July 28, 2017, after Schweickert had completed her interview with Plaintiff, she contacted[2] Smith via telephone and asked him about Bay's leadership and work style while Bay was with Shoney's. (Schweickert Decl., ¶ 7.) Smith told Schweickert that he remembered Bay from his time with Shoney's in the operations/franchise department until 2004 when Plaintiff began working as a Shoney's franchisee. (*Id.* ¶ 8). Smith discussed with Schweickert that Golden Corral is much more complex and difficult to run than Shoney's, and that he was aware that an FBC at Golden Corral is tasked with supporting and coaching franchisees to achieve optimal results, as

---

[1] Bays' job application did not reflect that he had ever worked at Shoney's. (Bays Dep., Ex. 5; Braun Decl. ¶ 4). Schweickert reviewed his resume on July 28, 2017, where she noticed, for the first time, that he had previously worked there. (Schweickert Decl. ¶ 3).
[2] Through Plaintiff's job application, Bays authorized Golden Corral to contact third parties to verify the information he provided related to his prior employment. (*See* Bay Dep., Exhibit 5 (Job Application); Braun Decl. ¶ 4, Exhibit B (same)).

5

well as ensuring that franchisees comply with Golden Corral's operations procedures and policies. (*Id.* ¶ 9). Smith reported to Schweickert that, during his time at Shoney's, he was aware of reports that Bay was very difficult to deal with and that he would not follow Shoney's operations procedures and promotions. Smith stated that he remembered specific comments surrounding the lack of cleanliness and sanitation in Bay's restaurants. Smith told Schweickert that, based on his experience, he did not believe Bay would be a good fit to handle the duties and responsibilities of an FBC position at Golden Corral. (*Id.* ¶ 10).

Smith told Schweickert that he had also reached out to the former Senior Vice President of Operations ("SVP") at Shoney's, who was over Shoney's franchisees while Bay owned and operated two franchisee restaurants, to inquire about his impression of Bay's leadership and work style at Shoney's. Smith reported that the former SVP told him that Shoney's had continual issues with Bay's two franchisee restaurants not following Shoney's operations procedures and promotions, and that Bay was very difficult to deal with. Smith said that the former SVP provided examples of Bay's restaurants not following Shoney's operations procedures and promotions, including issues with cleanliness and sanitation, and not offering all of Shoney's required products. Smith reported that he did not recommend Bays for the FBC position at Golden Corral. (*Id.* ¶ 11; *see also* Smith Decl. ¶¶ 4-6).

Later, on July 28, 2017, after her conversation with Smith, Schweickert conveyed Smith's feedback and input about Bay's leadership and work style to Hinojosa and Irwin. (Schweickert Decl. ¶ 12). Irwin collaborated and exchanged feedback with Braun,

6

Wilkerson, Schweickert, and Hinojosa about whether Golden Corral should hire Bays for the FBC position. (Irwin Decl., ¶ 9; *see also* Filing No. 46-4, Hinojosa Decl. ¶ 4). There was some concern about Bays' time away from a hands-on FBC role as he had not worked in that capacity for any restaurant for at least 13 years, and he had not worked in the restaurant industry for approximately 3 years. (Hinojosa Decl. ¶ 6). There were also concerns with his lack of leadership and time-management abilities, and his unfamiliarity with the day-to-day duties and responsibilities required of an FBC in order to adequately support franchisees and drive results. (*Id.*).

### C. Bay Is Not Selected

Based primarily on Smith's feedback, Hinojosa decided not to hire Bay to work for him as an FBC. Hinojosa was particularly concerned with Bay's ability to perform the day-to-day duties and responsibilities required of an FBC, such as ensuring that franchisees comply with Golden Corral's operations procedures and policies, and supporting and coaching franchisees to achieve optimal results. (*Id.* ¶ 7).

### D. Golden Corral Hires R. Craig Furches

Due to a reduction in company-owned restaurants in August 2017, Golden Corral was overstaffed for their District Manager positions. (*Id.* ¶ 8). As a result, Golden Corral no longer had a DM position available for R. Craig Furches, a multi-unit management candidate in training who was hired on April 3, 2017, to work as a DM. (*Id.* ¶ 9). According to Hinojosa, Furches possessed superior qualifications and relevant work experience for the FBC position than Bay. (*Id.* ¶ 10). Hinojosa decided to abandon the hiring process for the FBC position and selected Furches for the position. (*Id.*).

7

All other facts necessary for the resolution of Bays' claim will be addressed in the Discussion Section.

## III. Summary Judgment Standard

Summary judgment is proper where the evidence—including depositions, answers to interrogatories, admissions on file, and declarations—show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party. *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996). To survive summary judgment, the nonmoving party may not rest on mere allegations or denials in his pleadings but must set forth specific facts, supported by record evidence, showing there is a genuine issue for trial. *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012).

## IV. Discussion

The ADEA prohibits an employer from discriminating against an employee due to the employee's age. 29 U.S.C. § 623(a)(1). Under a disparate treatment theory, an ADEA plaintiff must establish that his age was the "but-for cause" of his termination. *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012). This requires the plaintiff to show that his age was not just a motivating factor in Golden Corral's decision

to terminate him; he must show it was the *determinative* factor. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *Lindsey v. Walgreens*, 615 F.3d 873, 876 (7th Cir. 2010).

The central question on summary judgment is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In answering this question, the court utilizes the familiar *McDonnell Douglas* burden-shifting method. This requires the plaintiff to establish four elements: (1) he was a member of a protected age group (forty or older); (2) he applied for and was qualified for the position; (3) he did not receive the position; and (4) those who were hired were not in the protected group and had similar or lesser qualifications for the position. *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003). If the plaintiff establishes a prima facie case, the burden shifts to the employer to come forward with a legitimate, non-discriminatory reason for failing to hire the plaintiff. *Id.* If the employer provides such a reason, the plaintiff must show the employer's proffered reason was a pretext for age discrimination. *Id.*

The first three elements are not in dispute; the fourth element is. Golden Corral argues that Bay was never "rejected" for the position because Hinojosa abandoned the hiring process and "hand-picked someone outside the applicant pool [i.e., Furches[3]] to fill the position." *Tighe v. Bae Sys. Tech. Solutions & Servs.*, No. CCB-14-2719, 2016 U.S. Dist. LEXIS 52394, at *18-19 (D. Md. Apr. 19, 2016) (citing *Hackney v. Perry*, No. 97-

---

[3] Although Furches' age is not in evidence, Bay contends he was 46 years old when Hinojosa selected him for the FBS position.

9

2055, 1998 U.S. App. LEXIS 29459, at *6-7 (4th Cir. Nov. 18, 1998) ("Because the lateral transfer did not involve a promotion for [the person hired], competitive selection was not required. Thus, [the plaintiff's] application was not considered, and thus, he was not rejected within the meaning of *McDonnell Douglas*."). In both *Hackney* and *Tighe* (cited by Golden Corral) however, the employer abandoned the selection process before anyone was ever interviewed. *Hackney*, 1998 U.S. App. LEXIS 29459, at *2; *Tighe*, 2016 U.S. Dist. LEXIS 52394, at *18-19. Here, Bay went through the interview process and was simply waiting to hear whether he would be hired or not. (*See* Irwin Decl. ¶ 3 (explaining interview process)). In that sense, he was "rejected."

With regard to qualifications for the position, it is undisputed that Hinojosa considered Furches to have "far superior qualifications and work experience for the FBC position than [Bay]," and that Hinojosa was aware that "Furches was an outstanding employee with exemplary work performance who excelled during training." (Hinojosa Decl. ¶ 9; *see also* Braun Decl. Ex. C, Bays' resume; Ex. G, Furches' resume). Bay does not agree with that assessment, claiming Furches has "woefully" less consulting experience than he has. But Bay has no personal knowledge of Furches's background and experience. Bay therefore fails to show he is more qualified for the FBC position than Furches. *Hawkins v. PepsiCo., Inc.*, 203 F.3d 274, 280 (7th Cir. 2000) (explaining that, with regard to an employee's work performance, "it is the perception of the decision maker which is relevant, not the self-assessment of the [employee].") (internal quotation marks and citations omitted)).

Even if Bays had established a prima facie case of age discrimination, Bays cannot establish that Golden Corral's legitimate business reasons for not hiring him are a pretext for age discrimination. "A plaintiff can establish pretext 'directly with evidence that [an] employer was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible.'" *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001) (quoting *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999)). Using indirect evidence, a plaintiff may establish pretext by showing that the employer's stated reason for the adverse action is: (1) factually baseless; (2) not the actual motivation for the adverse decision; or that it is (3) insufficient to motivate the adverse decision. *Id.* Pretext does not address the issue of whether the employer's employment decision was correct; rather "it addresses the issue of whether the employer honestly believes in the reasons it offers." *Id.* (internal quotation marks and citation omitted). Thus, the ultimate inquiry is whether Golden Corral honestly believed in the reasons it advanced for halting the hiring process.

Bays points to comments made by some of the interviewers which he contends show age bias. As an initial matter, Bays alleges Braun and Schweickert[4] allegedly stated that long-term employees were resistant to change that the older employees can be a blessing and a curse. These comments are not necessarily linked to Bays' age. The comments about Golden Corral's long-term employees does not apply to him because he

---

[4] In his Complaint, Bays alleged that Irwin made similar comments. (*See* Compl. ¶ 17). But in his deposition, he testified he thought his interview with Irwin "went well" and that nothing was said during the interview that he considered problematic. (Bays Dep. at 85, 122).

11

did not work there at the time. The comments about older employees can be interpreted two ways. First, one could interpret the comment to relate to Golden Corral's long-term employees. If that was the intent, as noted above, the comment has no application to him. Second, one could interpret the comment to relate to older employees generally. Even then, however, the comment is not *biased* against older employees. One could say the same thing about younger employees—they can be "good or bad."

In addition, Braun is 46 years old and has been with Golden Corral for 18 years, and Schweickert is 60 years old and has been with Golden Corral for 22 years. (Braun Decl. ¶ 1; Schweickert Decl. ¶ 6). Furthermore, the two candidates Golden Corral selected to fill FBC positions prior to Bays' July 2017 interviews are the same age or older than Bays. (Hinojosa Decl. ¶ 12 (noting they were born in 1957 and 1958)). This evidence undercuts an inference that Braun's and Schweickert's comments were age-based. *See, e.g., O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (stating "an inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger").

Next, Bays alleges Wilkerson compared himself to him and asked how he would make it through 12 weeks of training. (Bays Dep. at 94). It is not clear from Bays' deposition testimony what exactly Wilkerson said to him. According to Bays, Wilkerson told him management training would last "60, 70, 80 hours a week" and that Wilkerson "really made it sound just horrible." (*Id.* at 95). When he discussed the conversation with Braun immediately after his interview with Wilkerson, Bays told Braun that Wilkerson's problem was not with his age, but with his physical shape. (*Id.* at 111 ("And

12

I don't think I said that it was an age problem, that it was a physical problem. I told her that [Wilkerson] does not believe that I can physically make it through the training.")). Wilkerson's alleged concern with his physical shape does not necessarily show age bias.

Even if these comments were indicative of age discrimination, "[i]solated comments must be made by the decision-maker, unless the 'plaintiff can show that the attitudes of the person who made the remarks tainted the decision[-]maker's judgment.'" *Korotko-Hatch v. John G. Shedd Aquarium*, 65 F.Supp.2d 789, 801 (N.D. Ill. 1999) (quoting *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1121-22 (7th Cir. 1998)). Hinojosa—not Braun, Schweickert or Wilkerson—made the ultimate decision to not hire Bays. (Braun Decl. ¶ 13; Schweickert Decl. ¶ 12). Bays has presented no evidence that Braun, Schweickert, and/or Wilkerson tainted Hinojosa's decision. And Bays testified that Hinojosa made no similar comment. (Bays Dep. at 136).

Bays also argues that Golden Corral "lied over and over again" regarding the reasons it did not hire him. As support, he points to the August 3, 2017 email from Braun and the August 23, 2017 letter he received from Irwin. A brief synopsis of the parties' correspondence reflects that Braun's and Irwin's correspondence with Bays does not conflict.

On August 1, 2017, Braun informed Bays by email that Golden Corral would not be moving forward with the next steps in the hiring process. (Braun Decl. ¶ 12, Ex. E, Email). Bays responded by asking her to be more specific because he was "serious about his job search and [did not] want to make the same mistakes." (*Id.*). On August 3, Braun responded that "there was some concern about the time away from the hands-on FBC role

13

and specific examples of managing your time and weekly schedule of the day-to-day responsibilities of the FBC position in support of franchisees and driving results." (*Id.*). Angry at this point, Bays sent a letter to Golden Corral's CEO accusing Golden Corral of age discrimination. (*Id.*). On August 23, Irwin sent Bays a letter explaining that one of the interviewers had a personal contact with someone who used to work with him at Shoney's. (Irwin Decl., Ex. A, Letter). The interviewer "reached out for input about [his] leadership and work style[;] [a]s a result of that feedback it was decided that [he] may not be the best fit for [Golden Corral's] culture and [they] decided not to proceed." (*Id.*).

Braun's email and Irwin's letter do not conflict. Braun gave a synopsis of the concerns the interviewers expressed after their interviews with Bays. Irwin's response was more specific, explaining the negative feedback they received from Smith. Hinojosa considered the interviewers' concerns and, [b]ased primarily on Smith's feedback, [he] decided not to hire [Bays] to work for [him] as an FBC." (Hinojosa Decl. ¶ 7). Bays challenges the factual basis of Smith's feedback because Smith has been retired since 2007 and Bays never worked for or with him at Shoney's. But even if Smith's report to Golden Corral was inaccurate, "'the pretext inquiry focuses on whether the employer's decision was honest, not whether it was accurate.'" *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005) (quoting *Helland v. South Bend Cmty. Sch. Corp.*, 93 F.3d 327, 330 (7th Cir. 1996)). The record is devoid of any evidence that Golden Corral did not honestly believe Smith's feedback in making the decision not to hire Bays.

14

Therefore, Golden Corral is entitled to judgment in its favor on Bays' age discrimination claim.

## V. Conclusion

Bays failed to raise a genuine issue of material fact on his age discrimination claim. Accordingly, Golden Corral's motion for summary judgment (Filing No. 45) is **GRANTED**.

**SO ORDERED** this 30th day of July 2019.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

Copy to:
Edward R. Bay
2550 Oakridge Dr.
Bedford, IN 47421